**United States District Court**
**District of Massachusetts**

```
_____
                               )
SCOTT PRAY,                     )
        Plaintiff,             )
                               )
        v.                     )    Civil Action No.
                               )    09-11923-NMG
SMPO PROPERTIES, INC. and OSCAR )
SEELBINDER,                     )
        Defendants.            )
_____)
```

**MEMORANDUM & ORDER**

**GORTON, J.**

Plaintiff Scott Pray ("Pray") brings suit against defendants SMPO Properties, Inc. ("SMPO") and its president Oscar Seelbinder ("Seelbinder") (collectively "the defendants") for breach of contract, breach of the covenant of good faith and fair dealing, unfair and deceptive acts and practices in violation of the Massachusetts Consumer Protection Act, Mass. Gen. Laws ch. 93A, §§ 2 and 11, negligent or intentional misrepresentation and breach of fiduciary duty. Pray also names 7-Eleven, Inc. as a reach and apply defendant. Before the Court are the parties' cross-motions for summary judgment and Pray's motion to amend his complaint.

## I.   Factual Background

Pray is a local contractor and the president of D.F. Pray, Inc. SMPO is a national developer and manager of commercial property. Seelbinder is the president and 100% owner of SMPO.

-1-

This dispute arises out of a series of meetings at which, Pray alleges, the parties formed a joint venture to locate and develop real estate.

In late 2006 or early 2007, Pray contacted Jack Mitchell ("Mitchell"), a national developer.  This led to a lunch meeting in Providence, Rhode Island at which Mitchell, Pray and Seelbinder discussed the possibility of pursuing a joint venture to locate and develop real estate for CVS stores.  No formal agreement was executed.  Seelbinder maintains that he and Mitchell were working through Warwick RICS, LLC ("Warwick RICS"), an entity owned or controlled by Mitchell, Seelbinder and Jerry Sklar ("Sklar").

The parties held a number of subsequent meetings.  Pray maintains that they formed a joint venture, pursuant to which, Pray would locate potential sites for development and receive a 25% interest in the joint venture's initial transaction and a 33% interest in all future ventures.  Seelbinder claims that they discussed the formation of a new limited liability company called "MARICS, LLC" that would be owned by Pray and Warwick RICS for the purpose of real estate development.  Pray allegedly stated that he had strong ties with the people in charge of real estate development at CVS and Walgreens.

Pray claims that, after these meetings, he identified property then owned by 7-Eleven located at 228 Broadway, Taunton,

Massachusetts ("the Property") as a potential location for the development of a CVS pharmacy.[1]  The Property was one of four abutting parcels of real estate that together made up the proposed site for the CVS pharmacy ("the Taunton Site").  Pray claims that he invested significant time and effort in locating the Property.  The defendants, however, allege that Mitchell had already spoken with 7-Eleven about acquiring the Property before they first met with Pray.  The defendants further allege that Pray directed Seelbinder and Mitchell to work with James Leach (an employee or partner of Pray's) to secure purchase and sale agreements for the other three parcels making up the Taunton Site.

Soon thereafter, Seelbinder began negotiations with 7-Eleven for the purchase of the Property.  Seelbinder and Pray discussed the terms of an offer to purchase the Property.  On February 23, 2007, SMPO executed a letter of intent to purchase the Property. On March 11, 2007, Sklar sent Pray's attorney, David Tracy ("Tracy'), a draft operating agreement by email.  The draft operating agreement provided for the formation of the MARICS, LLC in which the "Scott Pray Entity" would own 33 1/3% of the membership interests and Warwick LLC would own 66 2/3%.  Pray never signed the draft agreement.

---

[1] The Property is described by Pray as 228 Broadway and by the defendants as 226 Broadway.  They are, however, referring to the same parcel.

On August 28, 2007, SMPO executed a purchase and sale agreement whereby it agreed to purchase the Property for $1.2 million.  After that agreement was executed between SMPO and 7-Eleven, Scott Weymouth, through his company Arista Development LLC ("Arista"), offered to acquire SMPO's interest in the Property.  In an email sent on September 5, 2007, Seelbinder informed Pray of Arista's offer.  He confirmed his "agreement" with Pray and that "the Taunton location [will] serve as our initial project with your participation at 25% and all future projects [will] reset your participation at 33% of our entity." On February 12, 2008, SMPO assigned its right to purchase the Property to Arista for $600,000.[2]  Pray subsequently called Seelbinder demanding 25% of the assignment, or $150,000, which Seelbinder refused to pay.

Seelbinder acknowledges in his deposition that he pursued the Taunton CVS and another potential project involving a Brooks Pharmacy Corporate Headquarters on behalf of the joint venture. He testified that, at the time, he thought that Warwick RICS and Pray had an agreement.  Seelbinder argues, however, that Pray never fulfilled his end of the bargain because he never signed the operating agreement for the MARICS, LLC and was absent for approximately 12 months until March, 2009 when Pray allegedly

---

[2] It is unclear why, but the parties also state the figure of $550,000 in their briefs.

called to claim his share of the sale proceeds.  He claims that he realized there would be no joint venture in March, 2008 when Pray refused to accept or return his phone calls.

Pray brings an action for breach of contract, alleging that the parties had a joint venture agreement which the defendants breached by failing to pay him $150,000.  Pray further alleges that the breach of contract constitutes an unfair or deceptive act in violation of Mass. Gen. Laws ch. 93A, §§ 2 and 11, a breach of the covenant of good faith and fair dealing, negligent or intentional misrepresentation and a breach of fiduciary duty.

## II.  Procedural History

Pray filed a complaint in the Massachusetts Superior Court on October 15, 2009.  One month later, the case was removed to this Court upon a motion by the defendants.  Trial was originally scheduled for August 9, 2010.  The reach and apply action was terminated as to defendant 7-Eleven, Inc. in March, 2010. Shortly thereafter, in succession, Pray moved to amend his complaint and moved for summary judgment and the defendants filed a cross motion for summary judgment.  Trial has been rescheduled to commence on October 18, 2010.

## III. <u>Legal Analysis</u>

### A.   Cross-Motions for Summary Judgment

#### 1.  Legal Standard

The role of summary judgment is "to pierce the pleadings and

to assess the proof in order to see whether there is a genuine need for trial." <u>Mesnick</u> v. <u>Gen. Elec. Co.</u>, 950 F.2d 816, 822 (1st Cir. 1991)(quoting <u>Garside</u> v. <u>Osco Drug, Inc.</u>, 895 F.2d 46, 50 (1st Cir. 1990)).  The burden is upon the moving party to show, based upon the pleadings, discovery and affidavits, "that there is no genuine issue as to any material fact and that the moving party is entitled to a judgment as a matter of law."  Fed. R. Civ. P. 56(c).

A fact is material if it "might affect the outcome of the suit under the governing law."  <u>Anderson</u> v. <u>Liberty Lobby, Inc.</u>, 477 U.S. 242, 248 (1986).  "Factual disputes that are irrelevant or unnecessary will not be counted."  <u>Id.</u>  A genuine issue of material fact exists where the evidence with respect to the material fact in dispute "is such that a reasonable jury could return a verdict for the nonmoving party."  <u>Id.</u>

Once the moving party has satisfied its burden, the burden shifts to the non-moving party to set forth specific facts showing that there is a genuine, triable issue.  <u>Celotex Corp.</u> v. <u>Catrett</u>, 477 U.S. 317, 324 (1986).  The Court must view the entire record in the light most hospitable to the non-moving party and indulge all reasonable inferences in that party's favor.  <u>O'Connor</u> v. <u>Steeves</u>, 994 F.2d 905, 907 (1st Cir. 1993). Summary judgment is appropriate if, after viewing the record in the non-moving party's favor, the Court determines that no

genuine issue of material fact exists and the moving party is
entitled to judgment as a matter of law.

### 2. Application

The issues before the Court are whether a contract was
formed between the parties and, if so, the terms of that
agreement.  Pray argues that he is entitled to summary judgment
on all counts because he has shown that: 1) he, Seelbinder and
Mitchell formed a joint venture, or a general partnership for a
particular purpose, the terms of which provided that Pray would
locate potential sites for development and receive 25% of the
first real estate project and 33% in all future ventures and 2)
the defendants breached the agreement by refusing to pay Pray 25%
of the revenue that the defendants collected from assigning the
purchase and sale agreement for the Property to Arista.

The defendants contend that they are entitled to summary
judgment on all counts because no joint venture or enforceable
contract was formed.  First, the defendants maintain that Pray
failed to perform the condition precedent to the agreement of
executing an operating agreement for MARICS, LLC.  Second, they
argue that Pray abandoned the proposed venture and did not
perform his obligations under the agreement of obtaining a) a
commitment from either CVS or Walgreens to build a store on the
Taunton Site or b) purchase and sale agreements for the other
three parcels needed to complete the Taunton Site.

### a.   Contract Formation

In Massachusetts, the formation of a joint venture depends on the parties' manifest intent. Shain Inv. Co. v. Cohen, 443 N.E. 2d 126, 129 (Mass. App. Ct. 1982).[3]  A written agreement is not necessary for the creation of a partnership or a joint venture. Kansallis Fin., Ltd. v. Fern, 40 F.3d 476, 479 (1st Cir. 1994); Mass. Prop. Ins. Underwriting Ass'n v. Georgaklis, 931 N.E. 2d 995, 999 (Mass. App. Ct. 2010).  Courts consider a number of factors in determining the parties' intent:

> (1) an agreement by the parties manifesting their intention to associate for joint profit not amounting to a partnership or corporation; (2) a contribution of money, property, effort, knowledge, skill, or other assets to a common undertaking; (3) a joint property interest in all or parts of the subject matter of the venture; (4) a right to participate in the control or management of the enterprise; (5) an expectation of profit; (6) a right to share in profits; (7) an express or implied duty to share in losses; and (8) a limitation to a single undertaking (or possibly a small number of enterprises."

Cohen, 445 N.E. 2d at 130.

A contract is formed only if the parties 1) agree on all of the material terms, 2) have the present intention to be bound by that agreement and 3) support the agreement with sufficient

---

[3] The defendants argue that Rhode Island law governs the contractual issues in this case.  Because the defendants do not set forth any material differences between Rhode Island and Massachusetts law, the Court need not engage in a conflicts of law analysis.  See Millipore Corp. v. Travelers Indem. Co., 115 F.3d 21, 29 (1st Cir. 1997).

consideration.  <u>Neuhoff</u> v. <u>Marvin Lumber & Cedar Co.</u>, 370 F.3d
197, 201 (1st Cir. 2004); <u>Situation Mgmt. Sys., Inc.</u> v. <u>Malouf,
Inc.</u>, 724 N.E.2d 699, 703 (Mass. 2000).

Here, the Court cannot analyze whether a contract or joint
venture was formed because the parties do not agree on the
content of their discussions in late 2006 and early 2007.  The
following are material disputes over the terms of the agreement
which constitute genuine issues of material fact.

First, Pray denies that the parties discussed the formation
of the MARICS, LLC or that such formation was an agreed upon
condition precedent to the joint venture agreement.  On March 11,
2007, Sklar sent Tracy the draft operating agreement by email.
The defendants maintain and Pray denies that Tracy did not
respond until an email on September 5, 2007 when he wrote:

> "Thank you for the information.  That is very helpful.
> I will talk to Scott to determine his wishes as to
> documenting something further at this time."

Second, the defendants claim and Pray denies that Pray
stated on many occasions that he could reach an agreement with
either CVS or Walgreens to build on the Taunton Site.

Third, Pray denies that he insisted on being responsible for
obtaining purchase and sale agreements for the other three
parcels making up the Taunton Site.

Fourth, Pray claims that his obligation under the agreement
was to locate properties for potential real estate development

projects.  The defendants disagree and claim that they did not
need Pray to locate the Property because, when the group first
met, Mitchell had already spoken with 7-Eleven about acquiring
the Property.  Pray denies that assertion.

Fifth, Pray disputes the defendants' assertion that 1) he,
Mitchell and Seelbinder agreed to use SMPO properties as the
acquiring entity for the 7-Eleven, 2) SMPO did not contemplate,
discuss or intend to have any business relationship with Pray or
the anticipated entity and 3) SMPO would be paid a fee of between
$25,000 and $50,000 per project.

Sixth, the defendants claim and Pray disputes that, after
September 5, 2007, Pray was absent from the deal for
approximately 12 months and resurfaced in March, 2009 when he
demanded his share of the sale proceeds.

Although it appears from Seelbinder's deposition testimony,
his email to Pray on September 5, 2007 and the draft operating
agreement that the parties did contemplate forming a joint
venture, there remain many issues of material fact regarding the
terms of that agreement.  Without undisputed evidence of what was
said at the meetings between the parties, the record supports
conflicting inferences.  Thus, the question of contract formation
is a genuine issue of material fact for the trier of fact.  For
that reason, the cross-motions for summary judgment will be
denied.

### b.   Writing

The defendants also argue that no enforceable agreement was formed because it was not in writing.  The defendants maintain that Pray was acting as a real estate broker or finder as defined by Mass. Gen. Laws ch. 112, § 87PP.  In Massachusetts, pursuant to Mass. Gen. Laws ch. 259, § 7, a writing is required to enforce a real estate broker or finder's fee agreement.

An analysis of whether Pray was acting as a broker or finder of real estate as defined under Massachusetts law is not feasible at this stage because the parties dispute the terms of the alleged agreement.  Thus, summary judgment for the defendants on that basis will be denied.

### c.   Consideration

Finally, the defendants argue that, because no joint venture was formed, any promise in Seelbinder's September 5, 2007 email to Pray to share profits from the assignment of the purchase and sale agreement for the Property required separate consideration in order to be enforceable.  That basis for summary judgment also rests upon the disputed contents of the parties' discussions in February and March of 2007.  Because the Court cannot determine whether a joint venture was formed, the Court cannot analyze whether the email constituted an offer of a new contract or simply an affirmation of an existing contract.  For that reason, summary judgment for the defendants on that ground will be

-11-

denied.

**B.   Pray's Motion for Leave to Amend his Complaint**

In April, 2010, Pray moved to amend his complaint to include three additional defendants:  Mitchell, Sklar and Warwick RICS. Pray also seeks to add an allegation that Tom Moses, on behalf of Seelbinder, attempted to force Pray to withdraw this lawsuit by threatening him.  Pray does not, however, seek to add Tom Moses as a defendant.

Pray does not seek to amend his theory of liability against the original defendants but rather claims that the new defendants were also parties to the alleged joint venture.  The motion is unopposed.

**1.   Standard**

Under Fed. R. Civ. P. 15(a), leave to amend before trial will be freely given "when justice so requires".  Despite that liberal amendment policy, the Court will deny a motion for leave to amend if amendment would result in undue delay or prejudice, the moving party has a bad faith or dilatory motive, the moving party has repeatedly failed to cure deficiencies with previous amendments or the amendment would be futile.  Foman v. Davis, 371 U.S. 178, 182 (1962).

**2.   Application**

Pray asserts that the amendment is timely and will not delay the case or prejudice any of the defendants.  Indeed, the new

defendants will not purportedly be prejudiced by their addition to the case because, as the business partners of Seelbinder, they have been involved in the defense of the action from the outset. Moreover, at the time the motion to amend was filed, the litigation was relatively new.

Such an amendment would require that the Court continue the trial date to allow the new defendants to answer the amended complaint and conduct necessary discovery.  An amendment could, therefore, result in undue delay of the litigation.  Nonetheless, the Court finds that, in the interest of justice, the new parties should be joined so as to resolve the entire dispute and because the disruption will be relatively insignificant.

For the stated reasons, the Court will allow the motion to amend and will postpone the trial for a short period.  Given that the new defendants are business partners of the original defendants, are likely conversant with the issues at hand and may even be represented by the same counsel, the delay in the commencement of trial will be limited.  The trial will commence within 90 days after the joined defendants are properly served with process unless they show good cause for a further delay.

**ORDER**

In accordance with the foregoing,

1)    the cross-motions for summary judgment of the plaintiff
      and defendant (Docket Nos. 17 and 21) are **DENIED;**

2)    plaintiff's motion for leave to amend his complaint
      (Docket No. 14) is **ALLOWED;** and

3)    the trial will commence within 90 days after the joined
      defendants are properly served with process unless they
      show good cause for a further delay.


**So ordered.**

                              /s/ Nathaniel M. Gorton
                              Nathaniel M. Gorton
                              United States District Judge
Dated October 13, 2010